THWANDA MAGEE, INDIVIDUALLY,
AND AS MOTHER AND NEXT FRIEND OF
MINOR 1, MINOR 2, AND MINOR 3                                   PLAINTIFF

v.                                CIVIL ACTION NO. 5:19-cv-52-DCB-MTP

PIKE COUNTY;
KENNY COTTON, IN HIS OFFICIAL
CAPACITY; BENA WILLIAMS-JONES,
IN HER INDIVIDUAL AND OFFICIAL
CAPACITY; OTHER UNKNOWN EMPLOYEES
AND ELECTED OFFICIALS OF PIKE
COUNTY, IN THEIR INDIVIDUAL AND/OR
OFFICIAL CAPACITIES                                            DEFENDANTS

## ORDER

This cause is before the Court on plaintiff Thwanda Magee

("Magee")'s Complaint against defendants Pike County, Sheriff

Kenny Cotton in his Official Capacity, Deputy Bena Williams-

Jones in her Individual and Official Capacity, and Other Unknown

Employees and Elected Officials of Pike County. [ECF No. 1].

Defendant Bena Williams-Jones ("Williams-Jones") has filed a

Motion for Judgment on the Pleadings Based on Qualified Immunity

[ECF No. 13] and a Motion for Summary Judgment [ECF No. 15].

Defendants Kenny Cotton ("Cotton") and Williams-Jones have filed

a Motion for Judgment on the Pleadings as to Official Capacity

Claims [ECF No. 17].

On or about April 18, 2018, Magee was returning home after work and saw in her driveway Pike County law enforcement officers, who claimed to be looking for a "black male" carrying a gun. Pike County Deputy Williams-Jones and other deputies began to question Magee about the location of the man they were looking for. Magee told the law enforcement officer that she had no knowledge about such a man. After this interaction, Magee's mobile home and vehicles on her property were searched without a search warrant and without Magee's consent.

Magee was arrested and charged with possession of marijuana and for giving false identification. She was transported to the Pike County jail and held overnight. The Pike County Deputies contacted the Department of Human Services and/or other state agency regarding the removal of Magee's minor children from her custody. The next day Magee appeared in Pike County Justice Court where both charges were dismissed and withdrawn by a Pike County Justice Court Judge. Magee was released from custody, but her children remained separated from her for three months.

Magee asserts that the deputies violated her Fourth and Fourteenth Amendment Constitutional rights when they: (1) "detained her without articulating a reasonable suspicion that she committed a crime;" (2) "searched her home and curtilage

without consent or a warrant;" (3) "arrested Ms. Magee without probable cause to believe she committed a crime; and/or" (4) "lawfully arrested her for an unlawful reason." [ECF No. 1] at p. 5.

## Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure governs a motion for judgment on the pleadings. The standard for addressing such a motion is the same as that for addressing a motion to dismiss under Rule 12(b)(6). See In re Great Lakes Dredge & Co., 624 F.3d 201, 209–10 (5th Cir. 2010). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 210(quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must be enough to raise the right to relief above the speculative level. See id. The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." Id.

Defendant Williams-Jones moves, in the alternative, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. A party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

3

R. Civ. P. 56(a). The Court is not permitted to make credibility determinations or weigh the evidence at the summary judgment stage of litigation. See Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009)(citing Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2010)). All facts and inferences must be made in "the light most favorable to the nonmoving party." See Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P., 627 F.3d 134, 138 (5th Cir. 2010)(citation omitted).

## Discussion

Official Capacity Claims

Plaintiff Magee filed suit against Sheriff Cotton and Deputy Williams-Jones in their official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. Because an official acting in his or her official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, he or she cannot be sued in his or her official capacity under § 1983. See id. Therefore, Plaintiff Magee's claims against Sheriff Cotton and Deputy Williams-Jones in their official capacities must be dismissed. Magee only sues defendant Cotton "in his official

4

capacity," so he shall be dismissed from this suit because there are no remaining claims against him. Magee's claims against Deputy Williams-Jones in her individual capacity will now be addressed.

<u>Personal Capacity Claims</u>

I.   <u>Unreasonable Search</u>

Plaintiff Magee's Complaint can be succinctly summarized: (1) when Magee arrived home from work, Pike County Law Enforcement officers were in Magee's driveway, searching for an African American man with a gun, (2) Magee informed the law enforcement officers that she had no knowledge of the man they were searching for, and (3) Deputy Williams-Jones searched her mobile home and the vehicles on her property without her consent or a search warrant.

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Supreme Court has made it explicitly clear that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980).

Physical entry of the home is the "chief evil" that the Fourth Amendment is directed toward. See id. at 585. However, the presumption that a warrantless search of a home is unreasonable can be overcome in some circumstances. See Kentucky v. King, 563 U.S. 452, 459 (2011). Some examples of exceptions to the warrant requirement are: (1) exigent circumstances, (2) emergency aid exception, (3) hot pursuit of a fleeing suspect, and (4) preventing imminent destruction of evidence.

The Court will apply the well settled framework for warrantless home searches to the facts at issue. According to the complaint, Magee's home was searched without a warrant and without her consent. Therefore, unless there is an exception to the warrant requirement, the search of Magee's home is presumptively unreasonable. In her Motion for Judgment on the Pleadings, Motion for Summary Judgment, and memorandum in support, Deputy Williams-Jones does not put forward a single reason or explanation to justify a warrantless search of Magee's home. The Defendant does not make any claim that there were exigent circumstances to justify the search, that she was in hot pursuit of a fleeing felon, that there was a medical emergency, or that there was any justification to search the home without first receiving a warrant to do so.

Deputy Williams-Jones simply states:

> "Plaintiff's Complaint fails to provide specific
> allegations of the circumstances surrounding Dep. Williams-
> Jones' basis for allegedly searching Plaintiff's home and
> vehicles other than to simply conclude it was
> impermissible. That is, Plaintiff merely contends that the
> searches were conducted without consent or a search
> warrant, but provides no substantive allegations
> surrounding her interaction with the deputy, the extent of
> the search, and her own actions and statements pertaining
> to the same."

[ECF No. 16] at p. 7. This misapplies the law and the

plaintiff's burden. It is not the plaintiff's responsibility to

inform the Court of the basis for the search. Should the Court

follow that logic, an officer could easily evade any

responsibility for justifying or explaining his or her actions

merely by claiming that the plaintiff has not provided enough

information. A plaintiff may not have the ability to ascertain

an officer's subjective determination that there was an exigent

circumstance, a medical emergency, that the officer was pursuing

a fleeing felon, or any other exception to the warrant

requirement. If there was an exception to the warrant

requirement, the officer has the responsibility of presenting

that information to the Court.

From the plaintiff's description of her interaction with

Pike County law enforcement, it does not appear that any of

these exceptions apply. Defendant Deputy Williams-Jones was not

in "hot pursuit" of a felon. She was looking for the man in

question, with no indication that he had run to Magee's home or

property. See United States v. Santana, 427 U.S. 38, 42–43 (1976). The record does not contain evidence that there was a medical emergency in the home or that there was an exigent circumstance, such as the possible destruction of evidence. According to the plaintiff's Complaint, her home and vehicles were searched prior to her arrest. See Chimel v. California, 395 U.S. 752, 763 (1969)(holding that an officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area within his immediate control). Regardless, defendant Deputy Williams-Jones does not claim that the search was a product of a search incident to a lawful arrest.

It is one of the strongest Constitutional tenets that a person has a high expectation of privacy in his or her home. A warrantless search is presumptively unreasonable. While the Complaint may be bare on details, it states the necessary elements for a claim: (1) Deputy Williams-Jones did not possess a warrant or have consent to search Magee's home, (2) there does not appear to be an exception to the warrant requirement and the Defendant does not assert an exception, but (3) a search occurred, nonetheless. That is sufficiently specific to allege a constitutional violation.

While a state official may not be sued in his or her official capacity, the official may be sued in his or her

individual capacity under § 1983. "[P]ersonal-capacity suits which seek to impose individual liability upon a government officer for actions taken under color of state law are admissible under § 1983." McGee v. Hunter, Case No. 03-378, 2004 WL 414807, at *2 (E.D. La. March 3, 2004). However, officials who are sued in their personal capacity may assert personal immunity defenses such as qualified immunity. Defendant officials must affirmatively plead the defense to benefit from its protections. See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Qualified immunity is "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511 (1985)(emphasis in original). Qualified immunity also protects officials against incurring the burden of "such pretrial matters as discovery." Behrens v. Pelletier, 516 U.S. 299, 308 (1996)(finding that such inquiries can be "peculiarly disruptive of effective government"). Public officials performing discretionary functions are generally shielded from suit unless it is shown by specific allegations that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

It is well settled that a qualified immunity analysis is a two-step process. First, a court must determine whether a

plaintiff has alleged the violation of a constitutional right.
Second, if the plaintiff has alleged a constitutional violation,
the court must decide if the conduct was objectively reasonable
in light of clearly established law at the time the challenged
conduct occurred.

As the Court has established that the warrantless search of
Magee's home was a constitutional violation, the Court must next
ask whether a "reasonable officer could have believed the
[defendant's] warrantless search to be lawful, in light of
clearly established law and the information the searching
officers possessed." Anderson v. Creighton, 483 U.S. 635, 641
(1987). This is a fact-specific question. Id. The Supreme Court
has stated:

> "We have recognized that it is inevitable that law
> enforcement officials will in some cases reasonably
> but mistakenly conclude that probable cause is
> present, and we have indicated that in such cases
> those officials — like other officials who act in ways
> they reasonably believe to be lawful — should not be
> held personally liable. The same is true of their
> conclusions regarding exigent circumstances."

Anderson, 483 U.S. at 641(internal citation omitted). Even with
probable cause, an officer may not enter a home – absent an
exigent circumstance – without a warrant. See Collins v.
Virginia, 138 S.Ct. 1663, 1672 (2018). Here, there is no claim
that Deputy Williams-Jones mistakenly concluded that there was

an exigent circumstance to justify the warrantless search of Magee's home.

A person has a constitutional right to be free from warrantless searches of one's home unless there is an exception to the warrant requirement, i.e., exigent circumstances, a medical emergency, being in hot pursuit of a felon, etc. This is a well-established constitutional principle. As the Defendant has not put forth a single articulable reason for searching the home and has made no claim that there was an exception to the warrant requirement, from the facts presented to the Court, no objectively reasonable officer would have believed the search of Magee's home to be reasonable without a warrant or consent. Therefore, the defendant is not entitled to a qualified immunity defense for this claim. Additionally, the defendant's motion for summary judgment fails inasmuch as the motion merely reiterates the defendant's motion for judgment on the pleadings.

II.   Detention

Magee alleges that she was detained "by Pike County deputies without reasonable suspicion that she had committed any crime," and that she was subsequently arrested "without probable cause." [ECF No. 1] at pp. 2–3. Magee also states that the search of her home and vehicles conducted by Deputy Williams-Jones was "unsuccessful." Id. at 4. Magee's Complaint does not

make clear which deputy detained her and which deputy arrested her. However, she clearly states that deputy Williams-Jones was the deputy who searched Magee's home and vehicles. Id. at 3.

Defendant Williams-Jones incorrectly applies Thompson v. Steele to support her proposition that she cannot be liable because she was not personally involved in detaining or arresting the plaintiff. See 709 F.2d 381, 382 (5th Cir. 1983). The defendant contends that a plaintiff must demonstrate that the defendant personally participated in the alleged unconstitutional conduct.

Defendant Williams-Jones states:

> "[i]t is clear from the pleadings that Dep. Williams-Jones conducted the search on Plaintiff's property and vehicles. Thus, it seems unlikely that Dep Williams-Jones could have personally detained Plaintiff during said search. Plaintiff's failure to allege that Dep. Williams-Jones was personally involved in her detainment, requires a dismissal." [ECF No. 16] at p. 8.

The defendant cites two cases to support her argument; however, both cases address the theory of vicarious liability in the context of § 1983 claims. See Thompson v. Steele, 709 F.2d at 382("The allegations of the pro se complaint do not make it clear whether recovery is sought on the basis that the defendants are responsible for someone else's conduct… which is called vicarious liability, or whether it is contended that one or more of them was personally negligent. Certainly § 1983 does

not give a cause of action based on the conduct of subordinates)(internal citations omitted); see also, Borden v. Jackson County, Miss, No. 1:11-cv-193-HSO-JMR, 2012 WL 4339092, at *6 (S.D. Miss. Aug. 24, 2012)("An official… who is sued in his individual capacity cannot be liable under § 1983 on the theory of respondeat superior, he must have been personally involved in the plaintiff's injury to be liable). This suit does not involve a question of vicarious liability or the responsibility of a supervising officer. As such, the Court will look to precedent established by the Fifth Circuit in connection to "stand by" or backup officers who are present when alleged constitutional violations occur, but do not personally effectuate the actual constitutional violation.

Two Fifth Circuit cases directly address the issue of the liability of backup officers. In Melear v. Spears, a deputy sheriff of a neighboring county provided backup for another officer's illegal search of an apartment building. See 862 F.2d 1177 (5th Cir. 1989). The backup officer stood "armed at the door of the building while the search proceeded." Id. at 1186. The Fifth Circuit concluded that this made the officer "a full, active participant in the search, not a mere bystander," and that "[b]oth men thus performed police functions that were integral to the search." Id.

In James by James v. Sadler, the Fifth Circuit reversed the district court's decision to grant summary judgment based upon the finding of the district court that "the defendants were merely back-up officers who did not participate in the search or detention of the plaintiff." See 909 F.2d 834, 836 (5th Cir. 1990). Yazoo City police officers were armed and, on the premises, while another officer performed a constitutionally impermissible search of the plaintiff. See id. at 837. Under the standard in Melear, the officers were participants rather than bystanders. See id. None of the officers in question had physically conducted the search, but the Fifth Circuit found that the officer's activities – being present and armed – were "integral to the search." Id.

Here, it is not disputed that Williams-Jones was present at the scene. There is a genuine issue of material fact as to whether Williams-Jones performed police functions that were integral to the search. Having determined that the defendant's participation in the detention may be sufficient to impose liability under § 1983, the Court must then determine if the officer is immune from suit. See id at 837–38.

The Fourth Amendment applies "to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." A "person is deemed 'seized'

14

within the meaning of the Fourth Amendment only if, in view of
all the circumstances surrounding the incident, a reasonable
person would have believed that he was not free to leave."
Carroll v. Ellington, 800 F.3d 154, 170 (5th Cir. 2015)(citing
United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

There are different tiers of police-citizen contact for
purposes of Fourth Amendment analysis:

> "The first tier involves no coercion or detention and does
> not implicate the fourth amendment. The second tier, an
> investigatory stop, is a brief seizure that must be
> supported by reasonable suspicion… Finally, the third tier
> is a full scale arrest [which] must be supported by
> probable cause."

Lincoln v. Turner, 874 F.3d 833, 840 (5th Cir. 2017). Detentions
that begin as one type can transform into another, i.e., a Terry
stop can transform into the equivalent of an arrest based on its
duration. See id. at 841. Magee's detention can be classified as
a second-tier investigatory stop and a third-tier seizure. Magee
asserts that she was detained without reasonable suspicion while
the Defendant searched her home and vehicle – an investigatory
stop. Magee asserts that she was then handcuffed, arrested, and
taken to the Pike County jail without probable cause – a full-
scale arrest. The full-scale arrest will be addressed in
following section addressing Magee's alleged "false arrest."

It is a well-established constitutional right to be free
from an unreasonable seizure. Defendant asserts that Magee has

failed to state with specificity that a constitutional violation occurred, and relies on Terry v. Ohio, 392 U.S. 1 (1968) to support the detention of Magee while officers searched her home and vehicles. The Terry stop and frisk rule is a "narrow exception" where police officers may "briefly detain a person for investigative purposes if they can point to 'specific and articulable facts' that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." Lincoln, 874 F.3d at 842. As the case law clearly states, the officer must be able to point to specific and articulable facts that give rise to reasonable suspicion. Courts assess the reasonableness of a Terry stop by "conducting a fact-intensive, totality-of-the circumstances inquiry," and only consider "information available to the officer at the time of the decision to stop a person." Carroll, 800 F.3d at 171(internal citations omitted).

Here, the officer provides no facts to support her seizure of Magee. In her motion for judgment on the pleadings, or in the alternative, motion for summary judgment, the defendant merely states:

> "Here, Plaintiff gives little details on what occurred
> prior to her seizure, the actual seizure (i.e. such as the
> length of time she was held by officers), or either
> parties' actions during the seizure. Due to the
> insufficiency of her pleadings, the same fails to
> adequately state there was a violation of Plaintiff's

> Fourth Amendment right and, furthermore, has failed to
> plead facts sufficient to demonstrate the officer's conduct
> was objectively unreasonable under the circumstances."

[ECF No. 16] at pp. 8-9(internal citations omitted). It is not

Magee's responsibility to articulate the facts that led to the

officer to have reasonable suspicion to detain her. Magee makes

the following assertion: (1) she was detained by the police

while they searched her home, and (2) Pike County law

enforcement did not have reasonable suspicion to support the

detention. At this point, the officer must put forth "specific

and articulable facts" to support his or her decision to detain

the plaintiff.

Deputy Williams-Jones does not provide a <u>single</u> reason for

detaining Magee. She does not offer any specific facts that

would give rise to reasonable suspicion that Magee had committed

a crime, was committing a crime, or was about to commit a crime.

The law is explicitly clear that the officer must articulate

facts to supports his or her decision to seize a person for the

purposes of a <u>Terry</u> stop. The record is silent as to what facts

support the decision of Deputy Williams-Jones to search Magee's

home and vehicles and to detain her while doing so. This Court

must evaluate the availability of the immunity defense based on

this limited record. <u>See</u> <u>James by James</u>, 909 F.2d 834, at 838.

Therefore, when looking at the facts presented to the court,

Williams-Jones' seizure was objectively unreasonable, and she is not entitled to qualified immunity on this claim.

### III. False Arrest

When a public official is sued under 42 U.S.C. § 1983 and raises a qualified immunity defense, the plaintiff must comply with a "heightened pleading" standard. See Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996). To satisfy the heightened pleading standard, plaintiffs must make claims of "specific conduct and actions giving rise to a constitutional violation." Id. at 195. Mere conclusions will not be enough, a plaintiff must allege particularized facts that support his or her allegations. See id.

It is clearly established law that a warrantless arrest without probable cause is unconstitutional. To prevail on a section 1983 false arrest claim, the plaintiff must show that Deputy Williams-Jones did not have probable cause to arrest her. See Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" Id. at 655–56(citing Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)). Nonetheless, [e]ven law enforcement

officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 206 (5th Cir. 2009)(citing Mendenhall, 213 F.3d at 230). Magee "must clear a significant hurdle to defeat [Williams-Jones'] qualified immunity." Haggerty, 391 F.3d at 656(internal citation omitted).

Magee was arrested for possession of marijuana and providing law enforcement with a false identification. In Magee's complaint, she asserts "[f]ollowing an unsuccessful search, the deputies questioned Ms. Magee again and subsequently arrested Ms. Magee without probable cause." [ECF No. 1] at p. 4. It is unclear as to whether Ms. Magee is claiming that Pike County law enforcement did not find marijuana when Deputy Williams-Jones searched her home and vehicles, and yet that she was arrested despite Deputy Williams-Jones failing to find the controlled substance. The circumstances surrounding Magee's arrest for providing false identification are also unclear.

There is no information as to where the marijuana was allegedly found, when it was found, or by whom. Additionally, there is no information as to when Magee allegedly provided a false identification. Defendant Deputy Williams-Jones states:

> "Here, Plaintiff merely alleges that her home and vehicles were 'unsuccessful[ly]' searched and that she was subsequently arrested without 'probable cause' for

> possession of marijuana and giving false
> identification. Compl. ¶¶ 9-11. Notably, she does not
> deny that she was in possession of marijuana or that
> she gave false identification. Regardless, Plaintiff's
> conclusory allegations are insufficient to meet the
> heightened pleading standard. She not only fails to
> establish a constitutional violation but also fails to
> provide allegations sufficient to allow the Court to
> determine whether or not Dep. Williams-Jones' conduct
> was objectively reasonable under the circumstances."
> [ECF No. 16] at p. 10.

While the defendant notes that "[Magee] does not deny that she was in possession of marijuana or that she gave false identification," the defendant does not affirmatively declare that she discovered marijuana or received false identification from Magee. However, if Deputy Williams-Jones found marijuana or if Magee provided a false identification, then the defendant may have reasonably concluded that probable cause was present.

Schultea holds that a court may require the plaintiff to file a Rule 7(a) reply addressing qualified immunity after it has been raised by a defendant. See Schultea v. Roth, 47 F.3d 1427, (5th Cir. 1995) As the court in Schultea wrote, "[v]indicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." Id. at 1434. The plaintiff's Complaint fails to plead facts sufficient to overcome the defendant's qualified immunity defense regarding Magee's false arrest as specified in Deputy Williams-Jones'

Motion for Judgment on the Pleadings [ECF No. 13] and Motion for Summary Judgment [ECF No. 15].

<u>Conclusion</u>

The plaintiff has sufficiently pleaded enough facts to survive summary judgment on her claim for illegal search and illegal detention at this stage of the proceedings. Moreover, the defendant is not entitled to prevail on her qualified immunity defense to Magee's claim of illegal search or illegal detention.

The Court orders the plaintiff to submit a Rule 7(a) <u>Schultea</u> reply regarding the plaintiff's claim for false arrest within 20 days from the date of entry of this Order. The defendant shall have 14 days to submit her response thereto.

Accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that Defendant Cotton and Defendant Williams-Jones' Motion for Judgment on the Pleadings as to Official Capacity Claims [ECF No. 17] is GRANTED. Deputy Williams-Jones' Motion for Summary Judgment [ECF No. 15] and Motion for Judgment on the Pleadings [ECF No. 13] are denied in part. The Court will rule on Deputy Williams-Jones' assertion of qualified immunity, following Magee's <u>Shultea</u> reply and the defendant's response thereto.

SO ORDERED, this the 20th day of December, 2019.

__/s/ David Bramlette_____

UNITED STATES DISTRICT JUDGE